NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| THOMAS THADEUS SZCZERBA, | : | CIV. NO. 19-19932 (RMB) |
| | : | |
| Petitioner | : | |
| v. | : | **OPINION** |
| | : | |
| | : | |
| WARDEN, FT. DIX, NJ, | : | |
| | : | |
| Respondent | : | |

**RENÉE MARIE BUMB, United States District Judge**

This matter comes before the Court upon Petitioner Thomas Thadeus Szczerba's ("Petitioner") petition for writ of habeas corpus under 28 U.S.C. § 2241 (Pet., Docket No. 1), challenging the sanctions imposed by the Bureau of Prisons("BOP") as a result of Petitioner's prison disciplinary hearing at the Federal Correctional Institution at Fort Dix New Jersey ("FCI Fort Dix") on December 13, 2018. Respondent filed an answer to the petition (Answer, Docket No. 9.) Petitioner did not file a reply brief. For the reasons discussed below, the Court will deny the habeas petition on the pleadings and briefs, without oral hearing, pursuant to Federal Rule of Civil Procedure 78(b).

**I.   BACKGROUND**

Petitioner is serving a 140-month sentence imposed on him on May 15, 2017, in the United States District Court for the Eastern District of Missouri. (Declaration

1

of Corrie Dobovich ("Dobovich Decl."), Ex. 1, Docket No. 9-3 at 6.) If Petitioner receives all good conduct time that he was entitled to at the time Respondent filed the answer to the petition, his projected release date is October 19, 2025. (*Id.* at 5.)

## II. THE DISCIPLINARY PROCEEDINGS

On September 3, 2018, a staff member at FCI Fort Dix issued Petitioner an incident report, charging him with possession of a hazardous tool, a violation of BOP Disciplinary Code 108, and possession of any narcotics, a violation of Code 113.[1] (Dobovich Decl., Ex. 3, Docket No. 9-3 at 15.) The incident report states:

> On 9-03-2018 at approximately 11:30AM, I entered 339 [of] unit 5841 to conduct a random search. When I entered the room, I observed inmate SZCZERBA, THOMAS #42803-044 with an unknown Spanish inmate standing by locker 4L of the room. Both inmates were told that the room was going to be searched and that they needed to submit to pat-searches. After searching both inmates with negative results, I began to search locker 4L belonging to inmate SZCZERBA, THOMAS #42803-044. While searching the inmate's locker, I noticed that a box of playing cards was partly opened on the bottom of the locker. When I pulled the playing cards out of the box, I noticed a SANDISK ULTRA 32GB Micro SD card along with a small package of orange in color tabs wrapped in clear plastic on the bottom. At approximately 1:15pm, with the assistance of officer Ellis, a test of the unknown orange substance was conducted using the NIK Kit in the West Lieutenant[']s office. Test pouches A, U, L, and K were utilized to find that a positive reading of a Heroin

---

[1] BOP "Code 108" applies to "[p]ossession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device.)" 28 C.F.R. § 541.3 (Table 1). "Code 113" applies to "[p]ossession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff."

>    based substance was present. Pictures of the contraband
>    were taken and placed in the S.I.S. locker.

(Dobovich Decl., Ex. 3 at 1, Docket No. 9-3 at 15.)

Petitioner received a copy of the incident report the same day. (*Id.*) Staff advised him of his right to remain silent, and Petitioner declined to make a statement. (*Id.* at 17.) The investigating officer referred the incident report to the unit discipline committee ("UDC") for an initial hearing. (*Id.*) Three days later, the UDC convened for an initial hearing on Petitioner's incident report. (*Id.* at 15.) Petitioner told the UDC that "the locker is damaged and is kept unsecured since moving into 5841 on August 30, 2018." (*Id.*) He provided a "cop-out" (Inmate Request to Staff) as support for his defense. (*Id.*) The UDC referred the incident report to a DHO for final disposition based on the seriousness of the charged offense. (*Id.*)

On September 6, 2018, Petitioner received a "Notice of Discipline Hearing Before the DHO," which informed him that his charge had been referred to a DHO hearing. (Dobovich Decl., Ex. 5, Docket No. 9-3 at 21.) On the form, Petitioner requested three witnesses, David Rodriguez, Brian Davis, and Michael Esposito, to testify at the hearing. (*Id.*) Petitioner also signed an "Inmate Rights at Discipline Hearing" form, acknowledging his rights. (Dobovich Decl., Ex. 4, Docket No. 9-3 at 19.)

The DHO hearing was held on December 13, 2018. (Dobovich Decl., Ex. 6, Docket No. 9-3 at 23-24.) Petitioner confirmed that he understood his rights and waived his right to a staff representative. (*Id.* at 23.) Petitioner's witnesses testified as

3

follows. Michael Esposito said that he had just returned from lunch on the day of the search. He saw one person, who did not live in the room, leaving the petitioner's dorm. He also saw two inmates standing outside the room. The locker inside the room was damaged and unsecured. Brian Davis testified that Petitioner's locker had to be turned upside down to open it. Finally, David Rodriguez said the locker was not functional, it had to be turned upside down to open it. He also saw three inmates outside the room when the search was conducted. (Dobovich Decl., Ex. 6, Docket No. 9-3 at 24-25.) Petitioner denied the charge, and testified that the locker did not have a lock and was damaged. (*Id.* at 25.) The DHO also considered a photo evidence sheet depicting the SD card and substance found to contain heroin, which was discovered in the locker. (*Id.*)

      The DHO determined that Petitioner possessed an SD card and, therefore, committed the prohibited act of possession of a hazardous tool, in violation of Code 108, but found that there was insufficient evidence that Petitioner committed the prohibited act of possessing narcotics (Code 113). (*Id.* at 24-25.) The DHO explained that the reporting officer found the SD card in the locker assigned to Petitioner, who was standing next to the locker when the officer arrived. (Docket No. 9-3 at 25.) Although the DHO believed the locker was dysfunctional, he also believed that it was open at the time the officer made rounds. (*Id.*) The DHO further noted that Petitioner was responsible for policing his area for contraband, and that he had lived in the room for nearly two weeks before discovery of the SD card – "more than ample time to police [his] area." (*Id.*)

4

The DHO imposed sanctions as follows: (1) 40 day loss of good conduct time; (2) loss of phone privileges for six months; and (3) loss of email privileges for six months. (Dobovich Decl., Ex. 5, Docket No. 9-3 at 25.) Petitioner received a copy of the DHO report on January 22, 2019. (*Id.* at 27.)

### III.  THE PETITION AND ANSWER

Petitioner raises the following due process challenges in his petition. (Pet., Docket No. 1-1.)

- the DHO's decision is based on insufficient evidence

- the incident report was too vague to give him adequate notice to prepare a defense to the disciplinary charges

- reporting staff did not have reasonable belief that Petitioner violated Codes 108 and 113, in violation of 28 C.F.R. § 541.5

- no investigation of the incident report was conducted, in violation of 28 C.F.R. § 541.8(3)[2]

---

[2] Although not cited by Petitioner, 28 C.F.R. § 541.5 provides for an investigation as follows:

> (b) Investigation. After you receive an incident report, a Bureau staff member will investigate it.
>
> (1) Information: The investigator will specifically inform you:
>
> (A) of the charge(s) against you; and
>
> (B) that you may remain silent at all stages of the discipline process, but that your silence may be used to draw an adverse inference against you at any stage of the process. Your silence alone, however, cannot be the basis for finding you committed the prohibited act(s).
>
> (2) Statement: When the investigator asks for your statement, you may give an explanation of the incident, request any witnesses be interviewed, or request that other evidence be

- the DHO was not an impartial decisionmaker, in violation of 28 C.F.R. § 541.8(3)(b)

- the sanctions were imposed in an arbitrary and capricious manner, in violation of 28 C.F.R. § 541.1

- the DHO ignored exculpatory witness testimony and did not base his decision on the greater weight of the evidence

- the BOP's Regional Director and the Central Appeals Office failed to address Petitioner's main arguments.

In answer to the petition, Respondent asserts that Petitioner was provided with all the due process protections required for prison disciplinary proceedings. (Answer, Docket No. 9.) Further, Respondent argues the DHO's decision was supported by "some evidence," the minimal standard that is required. Petitioner did not file a reply brief.

---

obtained and reviewed. However, the staff investigation of the incident report may be suspended before requesting your statement if it is being investigated for possible criminal prosecution.

(3) Informally resolving the incident report. The incident report may be informally resolved at any stage of the disciplinary process, except for prohibited acts in the Greatest and High severity levels, or as otherwise required by law or these regulations. If the incident report is informally resolved, it will be removed from your records.

28 C.F.R. § 541.5. According to the Incident Report, the investigation was conducted by staff member D. Montrose on the day of the incident. (Dobovich Decl., Ex. 3, Docket No. 9-3 at 17.)

## IV. DISCUSSION

### A. Standard of Law

In *Wolff v. McDonnell*, the Supreme Court described the minimum due process protections required before an inmate may lose good-time credits as a sanction for violating a prison rule. 418 U.S. 539, 563-71 (1974). The due process protections include (1) written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in defense; (3) opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and reasons for the disciplinary action; and (5) an appearance before an impartial decision-making body. *Wolff*, 418 U.S. at 563–567. The Supreme Court later held that "some evidence" is the standard of review applicable to prison disciplinary hearings that result in the loss of good time credit. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 454. The standard is met if any evidence in the record could support the conclusion by the tribunal. *Id.* at 455-56.

The BOP regulations for prison disciplinary proceedings, found in 28 C.F.R. §§ 541.1 to 541.8, exceed the minimum due process protections provided in *Wolff*. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994) ("[w]hile the regulations substantially track the procedures outlined in *Wolff*, in some respects they go beyond

7

what the due process clause itself requires.") (internal citations omitted). The harmless error analysis applies to allegations that the BOP violated its own prison disciplinary procedures. *Ancrum v. Holt*, 506 F. App'x 95, 98 (3d Cir. 2012) (citing *Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992)).

Under 28 C.F.R. § 541.5, when BOP staff have reason to believe that an inmate committed a prohibited act, the BOP must prepare an incident report and refer the matter for investigation. After an investigation, the incident report is provided to a UDC pursuant to 28 C.F.R. § 541.7, for an initial hearing. A DHO hearing must be conducted pursuant to the procedures set forth at 28 C.F.R. § 541.8. The procedures require the BOP to give inmates advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c). Inmates are entitled to the assistance of a staff representative for the DHO hearing. 28 C.F.R. § 541.8(d). The inmate has the right to be present throughout the DHO hearing, except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.8(e).

In a DHO hearing, the inmate is entitled to make a statement, present documentary evidence, and submit names of requested witnesses and have them called to testify, if reasonably available. 28 C.F.R. § 541.8(f). Once a decision has been made by the DHO, the DHO must prepare a record of the proceedings sufficient to document that the inmate was advised of his rights, the DHO's findings, the specific evidence relied upon by the DHO, the sanctions imposed, the reasons for the DHO's decision and for the sanctions imposed, and the record must be delivered to the inmate. 28 C.F.R. § 541.8(h).

8

B.  Analysis

1.  Sufficiency of the Evidence

a.  **The reporting officer had a reasonable belief that Petitioner violated Codes 108 and 113**.

Petitioner claims that the reporting officer did not have a reasonable belief that Petitioner possessed the SD card and narcotics found in his assigned locker. In support of this claim, Petitioner notes that the officer did not see Petitioner put anything in the locker. The officer did not find anything when he pat-searched Petitioner. The officer should have investigated further by: (1) recording how far Petitioner and another inmate were standing from the locker; (2) determining the identity of the other inmate; (3) inquiring who owned the partially opened deck of cards containing the SD card; (4) interviewing inmates regarding the presence of the contraband in the locker; (5) pat-searching all inmates in the area; (6) discovering that Petitioner was only housed temporarily in the cell; (7) recognizing that eleven other inmates were assigned to the cell, and hundreds of inmates passed the room every day; and (8) reviewing the contents of the SD card. Further, Petitioner submits that the complaining officer cleared the cell and blocked the window before searching. Thus, no one saw him discover the contraband.

"The application of collective responsibility in the prison context has its foundation in BOP Program Statement 5270.07, Inmate Discipline and Special Housing Units, which provides that it is an inmate's responsibility to keep his or her area free of contraband." *Denny v. Schultz*, 708 F.3d 140, 146 (3d Cir. 2013). Therefore,

when the reporting officer found contraband in Petitioner's assigned locker within his assigned living area, the officer had a reasonable belief that Petitioner possessed the contraband. Nothing more can be required of the reporting officer because the Third Circuit has held that the collective responsibility of prisoners to keep their assigned areas free from contraband governs the sufficiency of evidence to support a possession of contraband charge in a prison disciplinary proceeding. *Id.* at 147.

### b. The DHO considered all evidence presented at the hearing, and his decision is supported by the greater weight of the evidence

Petitioner contends that the DHO failed to consider the testimony of his witnesses. In sum, the witnesses confirmed that Petitioner's room and locker were open, the locker was broken and did not lock, and there were other inmates nearby when the contraband was found. Petitioner submits that because he offered evidence conflicting with the incident report, 28 C.F.R. § 541.8 required the DHO's decision to be supported by the greater weight of the evidence. Instead, the DHO's decision was arbitrary and capricious. Respondent counters that due process requires only that "some evidence" support the DHO's finding, and that standard is met where the SD card was found in a locker assigned to Petitioner, in Petitioner's assigned room.

The testimony of Petitioner's witnesses did not conflict with the incident report, which charged Petitioner with possession simply because the SD card and narcotics were found in his assigned locker, in his assigned room, while he was standing nearby. The witnesses did not testify that the contraband belonged to someone else or that it was not Petitioner's assigned locker or living space. The only

conflicting evidence presented at the hearing was Petitioner's denial of the charges. The DHO found the reporting officer to be credible because there was no evidence he had any animosity toward Petitioner, thus, no reason for staff to fabricate the charge. (Dobovich Decl., Ex. 6, Docket No. 9-3 at 25.) Petitioner had a self-interest in denying the charge to avoid sanctions.

In *Denny*, the Third Circuit discussed application of the BOP policy that prisoners must keep their areas free from contraband:

> a prisoner's area at a minimum includes the prisoner's cell as well as any other space accessible from within the cell. In a shared cell, all parts of the cell are equally accessible to each prisoner housed in the cell. Thus, each individual prisoner is responsible for keeping the entire cell free from contraband. Because each prisoner in a shared cell has an affirmative responsibility to keep the entire cell, and all other space accessible from within the cell, free from contraband, it follows that any contraband found within the cell is constructively possessed by each of the inmates housed in that cell. Thus, the mere discovery of contraband in a shared cell constitutes "some evidence" that each prisoner in that cell possessed the contraband.

*Denny v. Schultz*, 708 F.3d 140, 146 (3d Cir. 2013). Thus, where "two homemade shanks were found in a space accessible from within [the petitioner's cell].... This evidence, by itself, constitute[d] "some evidence" that [the petitioner] possessed the weapons in question." *Id.* at 147.

Similarly, it was Petitioner's responsibility to keep his assigned locker within his assigned cell free from contraband, despite the fact that other inmates had access to the locker. *See, e.g.*, *Donahue v. Grondolsky,* 398 F. App'x 767, 772-72 (3d Cir. 2010) (finding "some evidence" standard was met where numerous inmates had access to

dorm room, and contraband was found taped to the bottom of the petitioner's clothes drawer); *see e.g., Brown v. Recktenwald*, 550 F. App'x 96, 98 (3d Cir. 2013) (holding "some evidence" supported the DHO's finding that one of five inmates who shared a common sink area in their cell possessed the homemade shank found there)). Therefore, some evidence supported the DHO's finding that Petitioner possessed the SD card found in his locker.

Petitioner argues that because he presented conflicting evidence at the hearing, the DHO was required to meet a higher standard under 28 C.F.R. § 541.8(f), the greater weight of the evidence.[3] In the context of the collective responsibility of prisoners to keep their assigned areas free from contraband, the only conflicting evidence Petitioner might have offered was that the contraband was not found in his assigned locker or that he did not have an opportunity to keep it free of contraband. Here, Petitioner asserts that no one saw the officer search the locker and find the contraband. The DHO, however, considered a photo evidence sheet of the SD card and the substance found in the locker, and he gave reasons for finding the reporting officer credible and Petitioner not credible. Thus, the DHO found "the greater weight of the evidence is supported by the officer's statement that [he] discovered a [SD] card in a pack of playing cards at the bottom of your locker." The DHO's credibility

---

[3] The Third Circuit has not determined the difference, if any, between the "greater weight of the evidence" standard described in the BOP's regulation, and the "some evidence" standard described in *Hill*, 472 U.S. at 455. *Redding v. Holt*, 252 F. App'x 488, 490 n. 1 (3d Cir. 2007). The Third Circuit, however, noted that after the regulation was amended, it more closely resembled the *Hill* standard. *Id*.

finding and the photo evidence sheet were sufficient to satisfy the greater weight of the evidence standard in 28 C.F.R. § 541.8(f).

Finally, it is true the DHO found Petitioner not guilty of possessing narcotics that were found in the same place as the SD card. This does not mean the DHO's decision was arbitrary. Mr. Byrd, who served as DHO, submitted his declaration that he found Petitioner not guilty of possessing narcotics because the NIK test procedures, used to determine whether the substance found contained narcotics, were not properly followed. The color results of the test were not included in the body of the Incident Report. (Declaration of Karlton Byrd, Docket No. 9-2 at 2, ¶ 5.) Thus, the DHO's finding that Petitioner did not possess narcotics does not alter the conclusion that the greater weight of the evidence supported the DHO's finding that Petitioner possessed the SD card.

### 2. The incident report was not too vague to put Petitioner on notice of the charges

Petitioner argues that the incident report was too vague to put him on notice of the charges to prepare his defense for the DHO Hearing. (Pet., Docket No. 1-1 at 23.) The incident report identified the charges and described the time, place and circumstances of the search that led the officer to find the SD Card and the substance that tested positive for heroin within Petitioner's assigned locker. (*Id.* at 1-2.) Petitioner responded by presenting three witnesses at the DHO hearing to testify that other inmates had access to the locker, and Petitioner personally denied possession

of the contraband. Because Petitioner defended the charges, the incident report was not too vague to put Petitioner on notice.

### 3. 28 C.F.R. § 541.8(a)(3) does not require the BOP to refer the incident report back for further investigation

Contrary to Petitioner's argument, 28 C.F.R. § 541.8(a)(3) does not require the BOP to refer an incident report for further investigation before a DHO hearing. 28 C.F.R. § 541.8(a)(3) provides:

> The DHO will make one of the following decisions after a hearing on the incident report:
>
> (1) You committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report;
>
> (2) You did not commit the prohibited act(s) charged; or
>
> (3) The incident report will be referred back for further investigation, review, and disposition.

The DHO did not violate this regulation by finding, after a hearing on the incident report, that Petitioner committed one of the prohibited acts charged.

### 4. The DHO was an impartial decisionmaker

For the following reasons, Petitioner contends that Mr. Byrd was not an impartial decisionmaker. (Pet., Docket No. 1-1 at 25-26). Mr. Byrd is a unit manager in a building adjacent to Petitioner's housing unit, and he is part of the same West Side team as the complaining officer. He spends time with the complaining officer every day, and they share the same supervisors. Mr. Byrd has a vested interest in the success of charges brought by Fort Dix West Side officers because

success or failure reflects on all the officers. At a minimum, Petitioner submits, a DHO should come from another institution or the BOP Regional Office.

Petitioner is correct that 28 C.F.R. § 541.8(3)(b) requires that a DHO must be an impartial decisionmaker.[4]  The regulation, however, specifically requires only that the DHO was not a victim, witness, investigator, or otherwise significantly involved in the incident. This is consistent with the Third Circuit's holding that

> the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary body.

*Meyers v. Aldredge*, 492 F.2d 296, 306 (3d Cir. 1974).  There is no evidence that Mr. Byrd had any involvement in the circumstances underlying the charge. Therefore, it did not violate due process for Mr. Byrd to serve as DHO.

### 5. Petitioner does not have a due process right for the Regional Director and Central Appeals Office to address every issue raised on administrative appeal

Petitioner relies on BOP Program Statement 1330.18 for his claim that he was denied due process because neither the BOP's Regional Director nor the Central Appeals Office "seriously addressed" most of his arguments on administrative

---

[4] Pursuant to the BOP's Program Statement 5270.09, a "DHO may not conduct hearings without receiving specialized training and passing a certification test. If the institution's assigned DHO is unable to conduct hearings, the Warden arranges for another DHO, who must be certified." Mr. Byrd had the appropriate certification to serve as DHO. (Declaration of Karlton Byrd, Docket No. 9-2 at 2, ¶ 4.)

appeal. Respondent counters that administrative review of the DHO's decision is not one of the due process protections required by *Wolff*.

The due process protections described in *Wolff* and *Hill* do not include administrative review over a DHO's determination. "Prisoners do not have a constitutional right to prison grievance procedures." *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (citing e.g., *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases)). Even if the Regional Director and/or the Central Appeals Office failed to address an issue raised by Petitioner, the error was harmless because this Court has reviewed each of Petitioner's due process claims and found them to have no merit. *See Ancrum*, 506 F. App'x at 98 (harmless error applies to allegation that BOP violated its own disciplinary procedures).

## V.     CONCLUSION

Petitioner received all due process protections required for prison disciplinary hearings. Therefore, the Court denies Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2241.

An appropriate Order follows.

**Date:  December 28, 2022**

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**